UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB BLOCK,

                                              CASE NO. 2:22-cv-11689

        Plaintiff,           HON. GERSHWIN A. DRAIN

v.

GARY R. BRIESCHKE BUILDER LLC, *et al*.,

        Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#51] AND CANCELLING HEARING

I.      INTRODUCTION

Plaintiff Jacob Block fell from a ladder while constructing the roof of a home being built on Sand Lake in Franklin Township in Lenawee County, Michigan. He brings this lawsuit against the general contractor of the construction project, Defendant Gary R. Brieschke Builder LLC (Brieschke), claiming that Defendant is liable for Block's injuries under the common work area doctrine.[1] Now before the Court is Defendant Brieschke's Motion for Summary Judgment,

---

[1] Plaintiff originally also filed claims against the homeowners, Mark and Debra Sulkowski, however the parties stipulated to the dismissal of these defendants on December 6, 2023.

1

filed on December 28, 2023. Plaintiff filed his Response in Opposition on January 17, 2024, and Defendant filed its Reply on February 15, 2024.

Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will not conduct a hearing and will decide the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, Defendant's Motion for Summary Judgment will be denied.

## II.     FACTUAL BACKGROUND

Defendant Brieschke entered into a contract to build a home for Mark and Deborah Sulkowski. The home was located on Pentecost Highway along Sand Lake in Lenawee County, Michigan with the front of the home facing Sand Lake and the rear of the home facing Pentecost Highway.

The home was a three-story structure with many windows, sliding glass doors, exterior balconies, towers, and a multiple roofing system that required ladders to reach the various roof levels. Plaintiff argues that because of the small lot size for the large house, multiple subcontractors would prepare materials and work on the home in the area in front of the home facing Sand Lake and the rear of the home facing Pentecost Highway.

Defendant Brieschke was responsible to order all materials and schedule all work, inspect the work, fire subcontractors who failed to perform and provide opinions on the overall work as the project progressed.

According to Defendant Brieschke, the roof should be installed before the windows are installed.  However, he admitted that it was possible the roofers were working at the same time as the rough carpenters were installing windows along with heating and cooling workers and electricians working as well.

Scott Woodson operated Woodson Exteriors which provided residential roofing services. Defendant Brieschke had a verbal agreement with Woodson to provide the labor to install the roof and Defendant Brieschke would provide the materials. In addition to himself, Woodson employed roofers Kevin Barto, David Keenan and Plaintiff Jacob Block.

The roofing materials were delivered on January 25, 2021. On January 25, 2021, Woodson's roofing crew was on site and assisted in placing bundles of shingles on the roof with a boom truck from Pentecost Highway. A bundle of shingles weighs between 70-90 pounds.  In addition, pallets of shingle bundles were also placed on the ground in the back and front yard to be carried up ladders to the roof as necessary. Woodson and his crew including Plaintiff Block installed the roof from January 25 through January 30, 2021.

Defendant Brieschke ordered windows and sliding glass doors that Tecumseh Plywood delivered and stored in the garage on January 25, 2021, the same day that the roofing materials were delivered to the construction site. Defendant Brieschke entered a verbal agreement with Mark Ash of Ash Builders to install the windows and sliding glass doors on January 27 and January 28, 2021. Ash testified that it was customary to install windows as soon as they are delivered. Ash had nine (9) workers, a manlift and a Skytracker to install the windows and sliding glass doors. The window installers worked both from the ground and from the ariel lift equipment. Woodson testified that other subcontractors may have been on the site at the same time as the roofers but could not definitively answer whether they were at the worksite at the same time. Defendant Brieschke testified that he could neither confirm nor deny if Ash Builders employees were working at the same time the roof was being installed.

Conversely, Plaintiff Block testified that Defendant Brieschke was on site while ladders were positioned around the perimeter of the house, as well as while Block was carrying bundles of shingles up the ladders and Ash's crew was installing the windows and sliding glass doors on January 27, 2021. Brieschke, Ash and Block admitted during their depositions that roofers carrying bundles of shingles up ladders could fall and cause injury if other subcontractors were working below the roofers. As a consequence, Plaintiff asserts the area between

the front of the house facing Sand Lake and the rear of the house facing Pentecost Highway would have been common work areas for both the roofers and the window installers with a total of 14 workmen exposed to the risk of falling roofers, bundles of shingles, tools, and ladders.

Plaintiff Block was an inexperienced 19-year-old laborer who maintains he had no training as a roofer or in the use of ladders. On January 30, 2021, Plaintiff was carrying a bundle of shingles on his left shoulder up the ladder to Woodson, Barto and Keenan who were on the octagon tower shingling the roof.[2] Plaintiff missed a rung and fell straight down with the shingles and the ladder sliding to the left. The ladder came to rest on the porch roof between the octagon tower and the porch. At the time of the accident, no other subcontractors were on the construction site.

Plaintiff's expert witness John Whitty has testified that the proper method of ascending a ladder is to always maintain three points of contact with the ladder that means using both feet and one hand or two hands and one foot when ascending a ladder and not to carry any object or load that could cause the employee to lose balance and fall consistent with MIOSHA regulation R 40841122, Rule 1122 (4) which states:

---

[2] Barto and Keenan claim Plaintiff was carrying a roof jack.

> "(4) Each employee shall use at least 1 hand to grasp the ladder when progressing up or down the ladder. An employee shall not carry any object or load that could cause the employee to lose balance and fall."

MIOSHA R 40841122, Rule 1122(4).

Plaintiff's expert witness also testified that the technique that Woodson asserts as complying with MIOSHA R 408.41122, Rule 1122 is wrong. Common sense dictates that when you are climbing a ladder you must raise one foot from the lower rung to the higher rung. At that point, if carrying a bundle of shingles, you would only have two points of contact with the ladder. Also, carrying 80 lbs. of shingles while ascending the ladder is in direct violation of the rule and would tend to cause loss of balance and an inability to recover from a miss-step while ascending the ladder.

## III. LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The

procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S.

253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

### B. Common Work Area Doctrine

"At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees." *Ormsby v. Capital Welding, Inc.*, 471 Mich. 45, 48; 684 N.W.2d 320 (2004). However, the Michigan Supreme Court created an exception to this rule, known as the common work area doctrine. *Id.* Under this doctrine, a general contractor can be held liable for a subcontractor's negligence if the plaintiff can establish that "(1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area." *Id.* at 54. "[A] plaintiff's failure to satisfy any one of the four elements of the common work area doctrine is fatal to [his or her] claim." *Id*. at 59 (internal quotation marks omitted).

In this case, Plaintiff has shown genuine issues of material fact exist on the four elements of the common work area doctrine as to January 27 and January 28, 2021. On January 27, 2021, Woodson Exteriors four-man crew, Ash Builder's eight-man crew and general contractor Gary R. Brieschke were working in common areas on the construction site. On January 28, 2021, Woodson Exteriors four-man crew were on the site, Ash Builder's six-man crew, and general contractor Gary R. Brieschke were working in common areas on the construction site.

As to the first element of the common work area doctrine, Defendant Brieschke contractually agreed to act as the general contractor and would be responsible for "all safety precautions and programs in construction with the work and the construction site," to purchase and schedule delivery of building materials and to coordinate the subcontractors who were providing the labor. In addition, Brieschke testified that he retained the authority to fire subcontractors who failed to perform. A jury could conclude that Defendant Brieschke did not take reasonable steps within his supervisory and coordinating authority when scheduling Woodson Exteriors to roof the home while Ash Builders was installing the windows and sliding glass doors. Although the windows should have been installed after the roof was installed, Brieschke scheduled Ash Builders to install the windows and sliding glass doors in January, while Woodson was installing the

9

roof exposing all workmen to the risk of falling roofers, tools, bundles of shingles and ladders.

Next, there exists a question of fact as to whether Defendant Brieschke failed to guard against readily observable and avoidable dangers when he knew or should have known that Plaintiff Block and the other Woodson employees were improperly ascending ladders carrying bundles of shingles in violation of MIOSHA regulation R 40841122, Rule 1122. Defendant Brieschke had subcontracted with Woodson for over 30 years and knew that Woodson did not follow MIOSHA regulation R 40841122, Rule 1122 whenever he allowed his roofers to ascend ladders while carrying bundles of shingles.

Woodson's method of ascending the ladder by grasping the back of the rail as opposed to the rung while carrying an 80-to-90-pound bundle of shingles violated the rule to maintain three points of contact with the ladder and subjected the worker to losing his balance and falling. The violation of a federal or state regulation such as MIOSHA provides evidence of negligence. *Kennedy v. Great Atl. & Pac. Tea Co.,* 274 Mich. App. 710, 737 N.W.2d 179 (2007).

In addition, Plaintiff Block testified that Defendant Brieschke was on the construction site when he was ascending ladders carrying bundles of shingles. Defendant Brieschke could have easily advised Woodson to repair or rent a portable gas or electric bundle shingle lift in order to lift the shingle bundles to the

roof's edge. In addition, Defendant Brieschke could have instructed Woodson to follow MIOSHA regulations or removed Woodson from the construction site. However, Brieschke continues to subcontract with Woodson enabling him to expose not only his own laborers but other potential workers as well to the risk of roofers falling while ascending ladders carrying bundles of shingles.

There also is a question of fact as to whether there was a high degree of risk to a significant number of workers.  Ash testified that he was at the house on Pentecost Highway installing windows and sliding glass doors with 9 workers on January 27, 2023, from 7:30 am to 4:00 pm and 6 workers on January 28, 2023, and prepared a summary based upon payroll timecards and his memory.  The windows and sliding glass doors required cutting the Tyvek covering the opening for the windows and doors from the outside.  The workers would be working on the ground around the house's perimeter to install the 1st floor level windows and from ladders and manlifts to install the windows and sliding glass doors on the 2nd and 3rd levels.  Ash divided his workers into three-person crews installing windows with one member inside the house and two members outside the house. He specifically recalls the roofers working on January 27, 2023, at the same time his 9 workers were installing windows and sliding glass doors. On January 27, 2021, the total number of workers on the construction site would total fourteen (14). *See Hughes v. PMG Bldg., Inc.*, 574 N.W.2d 691, 694 (Mich. Ct. App. 1997)

11

("[I]t is not necessary that other subcontractors be working on the same site at the same time; the common work area rule merely requires that employees of two or more subcontractors eventually work in the area.").

The high degree of risk is that roofers ascending ladders carrying bundles of shingles on their shoulders could lose their balance and fall to the ground. In falling, the roofer, the bundle of shingles and the ladder could fall. The falling roofer and shingles would fall below the roofer and could strike anyone working within a few yards of the ladder. However, the falling 36' extension ladder would expose workers on the ground to length of the ladder. Although Brieschke asserts that the ladder was secure and didn't fall, Plaintiff Block testified that the ladder slid to the left and caught on the roof overhang without falling all the way to the ground. Woodson roofers and Ash window installers were exposed to the danger of the Woodson roofers falling while improperly ascending ladders carrying bundles of shingles on January 27, 2021 and January 28, 2021.

Finally, a question of fact exists as to whether Defendant Brieschke exposed the workers to danger in two common work areas. Because of the small lot size for the large house, multiple subcontractors would prepare materials and work in the area in front of the home facing Sand Lake in Lots 27 and 38 and the rear of the home facing Pentecost Highway. The Woodson roofers had to place ladders on the ground up to the roof areas, stored pallets of shingles on the ground in the areas in

12

front of the home facing Sand Lake and the rear of the home facing Pentecost Highway and cut and disposed of shingles to the ground around the house. Ash Builders' workers used ladders from the ground to the roof, had to carry and install windows and sliding glass doors around the perimeter of the house and had to station manlifts to bring workers up to the 2nd and 3rd levels of the house. As such, there are questions of fact as to Defendant Brieschke's claim that he is insulated from subcontractor Woodson's negligence in failing to properly train Plaintiff and permitting Plaintiff to ascend ladders while carrying bundles of shingles in violation of MIOSA regulation R. 40841122, Rule 1122.

## IV.  CONCLUSION

Accordingly, for the reasons articulated above, Defendant Brieschke Builder LLC's Motion for Summary Judgment [#51] is DENIED.

SO ORDERED.

Dated: April 10, 2024

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

13

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 10, 2024, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager